UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JOHN MOES,

       Plaintiff,

                                    Lead Case:    No. 1:11-cv-912
                                    Member Case: No. 1:12-cv-1092
v.                                    Hon. Hugh W. Brenneman, Jr.

JOHN WOODWARD and
CITY OF GRAND RAPIDS,

       Defendants.

_____/

## OPINION

       This matter is now before the court on defendants' motion for summary judgment (docket no. 75) filed in the present and lead case, *Moes v. City of Grand Rapids*, 1:11-cv-912 ("*Moes I*"), and plaintiff's "Request/Motion to transfer unconstitutional state criminal/City of Grand Rapids ordinances charges to federal court pursuant to Title 28 Section 1443 and 1446" (docket no. 1) filed in the member case, *Moes v. City of Grand Rapids*, 1:12-cv-1092 ("*Moes II*").

     **I.**     **Background**

     **A.**     *Moes I*

       Plaintiff's complaint in *Moes I* named two defendants, the City of Grand Rapids (sometimes referred to as the "City") and John Woodward, a City Code Compliance Officer.[1] Plaintiff's claims arise from a dispute with defendants regarding local ordinance violations issued to property located at 1054 Jennette Avenue NW, Grand Rapids, Michigan (sometimes referred to

---

[1] While plaintiff's complaint does not identify defendant Woodward's position with the City, his status is established by documents attached to the complaint which are signed by defendant Woodward in his capacity as "Code Compliance Officer II."  *See*, Notice to Vacate Condemned Dwelling (docket no. 1-2 at p. 6).

as "the property"). Plaintiff alleged that he purchased the property on contract from non-party Mr. Donker in March 2007. *Moes I*, Compl. at pp. 3-4.[2] The land contract was later recorded in June 2008. *Id.* Plaintiff spent more than $5,000.00 making improvements to the property. *Id.* at p. 4. Commencing in 2008, plaintiff started to receive "bizarre" complaints, correspondence and "fraudulent invoices" from defendant City of Grand Rapids regarding alleged housing code violations at the property. *Id.* at pp. 4-9.

Plaintiff lost possession of the property in 2010. *Id.* at p. 7. Shortly thereafter, the seller on the land contract seller, Donker, rented the property to third-parties. *Id.* Plaintiff regained possession of the property at proceedings held at the 61st District Court in Grand Rapids on May 3, 2011. *Id.* Later that month, on or about May 25, 2011, the City started to send plaintiff "fraudulent bills, invoices and complaints" related to the property. *Id.* at pp. 7-8. Plaintiff was homeless at the time and commenced proceedings in the 61st District Court to evict Donker's tenants. *Id.* at p. 8. During the eviction proceedings, the tenants retaliated against plaintiff by complaining to the City's housing inspection department. *Id.* The 61st District Court entered an order to evict the tenants on June 7, 2011. *Id.* Plaintiff stayed at the property that night. *Id.* The next morning, two Grand Rapids police officers tried to order plaintiff out of the property. *Id.* Plaintiff told the police officers they were trespassing and directed their attention to a "no trespassing" sign posted on the property. *Id.* On June 13, 2011, the City boarded up the property, "making [plaintiff's] residence inaccessible." *Id.* at pp. 8-9.

---

[2] Unless otherwise noted, the allegations are set forth in the Complaint for the lead case, No. 1:11-cv-912.

2

Although not mentioned in plaintiff's complaint, on August 11, 2011, the City commenced a criminal action against plaintiff in the 61st District Court arising from ordinance violations. *See City of Grand Rapids v. Moes*, No. 2011-OM-2234 (61st Dist. Ct.) (sometimes referred to as the "criminal case"). *See* docket nos. 79-2 and 92-2. The misdemeanor prosecution included four violations of the housing code: allowing a required utility to be shut off; failing to repair the electrical system; failing to repair the water system; and failing to install smoke detectors. *Id.* (Verdict Form) (docket no. 92-1). The criminal case concluded on August 28, 2012, when plaintiff was found guilty on all four counts *Id.* (Verdict Form) (docket no. 92-1); (Judgment of Sentence )(docket no. 103-1); and (Order of Probation) (docket no. 103-2). On October 15, 2012, the state court sentenced plaintiff to a term of 12 months probation. *Id.*

On August 29, 2011, a few weeks after the City commenced the criminal case, plaintiff filed *Moes I* against defendants City and Woodward. The complaint in *Moes I* listed nine claims. In Claim 1, plaintiff alleged that defendants violated the Fifth Amendment by taking his property located at 1054 Jennette without just compensation. *Id.* at p. 9. Plaintiff alleged that this claim was brought pursuant to 42 U.S.C. § 1983 for violation of his federal constitutional rights. *Id.* at pp. 13-14. Plaintiff also alleged that this action was part of a conspiracy between defendants in violation of 42 U.S.C. § 1985(3). *Id.* In Claim 2, plaintiff alleged that various notices and invoices sent by the City were invalid and in violation of state law, M.C.L. §§ 750.213 and 750.214 and 18 U.S.C. § 1862 [presumably 18 U.S.C. § 1962 of the Racketeer Influenced and Corrupt Organizations Act "RICO").[3] *Id.* at pp. 9-10. In Claim 3, plaintiff alleged that he was entitled to $100,00.00 in punitive and compensatory damages. *Id.* at p. 10. In Claim 4, plaintiff alleged that defendants

_____

[3] Title 18 U.S.C. § 1862 was repealed on Nov. 23, 1977. *See* Pub. L. 95-200, § 3(c), 91 Stat. 1428.

interfered and obstructed his mail in violation of 18 U.S.C. § 1701, because some one from the City "turned over the green address [sic] and wrote 'Vacant' on Plaintiff's address card, posted by the U.S. Post Office." *Id.* In Claim 5, plaintiff alleged that defendants violated his First Amendment rights of access to the courts by obstructing his mail. *Id.* In Claim 6, plaintiff alleged that he is entitled to compensation for the City's harassment in "dealing, with and returning fraudulent, illegal bills and invoices" sent to him by the City in 2008. *Id.* In Claim 7, plaintiff alleged that defendants' actions violated the Americans with Disabilities Act. *Id.* In Claim 8, plaintiff alleged that defendants violated 18 U.S.C. § 1962 (RICO), because they engaged in a pattern of racketeering activity through a collection of unlawful debts. *Id.* at pp. 10-11. In Claim 9, plaintiff alleged that defendants were trespassing when City Police Officers went to the property in violation of "No Trespassing" signs. *Id.* at p. 11.[4]

  **B.**   ***Moes II***

    On October 5, 2012, plaintiff filed a document entitled "Request/Motion to transfer unconstitutional state criminal/City of Grand Rapids ordinances charges to federal court pursuant to Title 28 Section 1443 and 1446." *See* Motion, *Moes II* (docket no. 1). Plaintiff designated this motion as filed in the pending civil litigation, but referred to himself as "Defendant Petitioner," named "City of Grand Rapids[,] Michal D. Tomich as "Respondent," and referenced the state criminal case. Notwithstanding plaintiff's attempt to file this document as a motion in the pending case, the Clerk's Office opened a new civil case file, *Moes II*, No. 1:12-cv-1092, despite the case being a criminal proceeding in state court. This motion was related to *Moes I*, contesting plaintiff's

---

   [4] On December 7, 2011, on the consent of the parties, this matter was referred to the undersigned for all further proceedings and the entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* Order of Reference (docket no. 31).

criminal convictions of four misdemeanors arising from the ordinance violations at issue in *Moes I*. This motion appeared to be part of plaintiff's response to defendants' motion to file a supplemental brief, in which they advised the court of plaintiff's convictions. *See Moes I*, Defendants' Motion for leave to file supplemental brief (docket no. 91). After reviewing plaintiff's request/motion, and to fairly address it, the court consolidated the actions, with *Moes I* as the lead case and *Moes II* as the member case, under the docket number of *Moes I* (1:11-cv-912). *See* Order to consolidate cases (docket no. 102).

## II.      Motion for summary judgment in *Moes I*

### A.      Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for

summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, in resolving this motion, the court has a duty to read *pro se* plaintiff's complaint indulgently and liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). However, this duty does not require the court to conjure up unpled allegations and claims.[5]

### B.    Plaintiff's Federal claims

### 1.    Fifth Amendment (Claim 1)

Plaintiff brings his Fifth Amendment claim pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal

---

[5] *See Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) ("[C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court 'conjure up unpled allegations,' *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)").

laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In Claim 1, plaintiff alleged that defendants violated his Fifth Amendment rights by taking the property without just compensation. While not explicitly stated in the amended complaint, plaintiff's claim is essentially one for inverse condemnation, i.e., the City's enforcement of the ordinances deprived him of the use of the property.[6] "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (internal citation omitted). Defendants contend that plaintiff's Fifth Amendment takings claim is subject to dismissal because it is not ripe for decision. The court agrees. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 807-08 (2003) (internal quotation marks omitted). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]" *Id.*

---

[6] "The phrase 'inverse condemnation' appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke*, 445 U.S. 253, 257 (1980).

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court explained that the Fifth Amendment's Takings Clause "does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194. Where a plaintiff has alleged a regulatory taking by a state or local government, a takings claim is not ripe for review unless a property owner has pursued the available state procedures to obtain just compensation and is denied that compensation. *See Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 569 (6th Cir. 2008); *Cotes v. Granville*, 448 F.3d 853, 861 (6th Cir. 2006). Thus, if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a federal constitutional violation until the owner "has used the procedure and been denied just compensation." *Cotes*, 448 F.3d at 861, quoting *Williamson County*, 473 U.S. at 195.

In *Williamson County*, the Supreme Court developed a two-step test for determining when an alleged regulatory taking by a governmental entity is ripe for decision in federal court. First, an alleged "taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County*, 473 U.S. at 186-87. The court's reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required to determined just compensation and the factors to be applied in this inquiry. *Id.* at 190-91. "Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land [or in this case property] in question." *Id.* at 191. Second, an alleged taking of a property interest is not ripe if the state provides an adequate procedure (such as a state cause

8

of action for inverse condemnation) until the property owner "has used the procedure and been denied just compensation." *Williamson County*, 473 U.S. at 194-195. The second requirement arises because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194.

As the Sixth Circuit explained in *Braun*:

Thus, in order for a plaintiff to bring a takings claim in federal court, he or she must first pursue available remedies in state court. Two issues inform this analysis: first, whether the initial decision-maker, i.e. administrative agency, has arrived at a "definitive position on the issue that inflicts an actual, concrete injury" (the finality requirement); and second, whether the state has denied just compensation based on that injury (the remedies requirement).

*Braun*, 519 F.3d at 569.

Here, plaintiff has alleged that the City's actions resulted in an unlawful taking of his property amounting to inverse condemnation. Michigan recognizes a state law action for inverse condemnation. *See generally*, *Hinojosa v. Department of Natural Resources*, 263 Mich. App. 537, 548, 688 N.W.2d 550 (2004). The two elements of an inverse condemnation claim are: (1) that the government's actions were a substantial cause of the decline of the plaintiff's property's value; and (2) that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. *Id.* at 549. Under the theory of inverse condemnation, the type of governmental action which constitutes a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. *Id.* *See Peterman v. State Department of Natural Resources*, 446 Mich. 177, 190, 521 N.W.2d 499 (1994) ("inverse condemnation may occur even without a physical taking of property, where the effect of a governmental regulation is 'to prevent the use of much of plaintiffs' property . . . for any profitable purpose.'"), quoting *Grand Trunk W.R. Co. v. Detroit*, 326 Mich. 387, 392-93, 40 N.W.2d 195 (1949)).

9

Plaintiff's claim fails to meet the second part of the *Williamson County* ripeness test. Plaintiff's Fifth Amendment claim seeks compensation which is available under a Michigan state claim for inverse condemnation. However, there is no allegation or evidence presented that plaintiff filed a state claim for inverse condemnation, because he has not sought just compensation for the alleged taking under the applicable state procedure prior to filing this federal action. Since plaintiff did not seek just compensation for the alleged taking under an applicable state procedure prior to filing this federal action, his Fifth Amendment takings claim does not meet the second step of the *Williamson County* ripeness test. Accordingly, defendants are entitled to summary judgment with respect to his Fifth Amendment claim.[7]

### 2. Conspiracy under 42 U.S.C. § 1985(3) (Claim 1)

Plaintiff has alleged that defendants entered into a conspiracy to violate his constitutional rights his claim fails. To establish a cause of action under § 1985(3), plaintiff must show four elements:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

Here, plaintiff has alleged that the City and its employees (including defendant Woodward) entered into a conspiracy against him. Plaintiff cannot demonstrate, however, the first element of a conspiracy, because the City and its employees are not considered "two or more persons" for purposes of a conspiracy claim under § 1985(3). The Sixth Circuit adheres to the

---

[7] In reaching this determination, the court expresses no opinion on whether plaintiff met the first part of the *Williamson County* test.

"intracorporate doctrine," which provides that "where all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy."  *Page v. City of Monroe*, 24 Fed. Appx. 249, 252 (6th Cir. 2001).  *See Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 764-65 (6th Cir. 2010) (applying the intracorporate conspiracy doctrine to civil conspiracies alleged under 42 U.S.C. § 1985(3)); *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 510 (6th Cir.1991) ("[t]his court has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees"). Defendants are entitled to summary judgment with respect to plaintiff's conspiracy claim under § 1985(3).

### 3.    Damages (Claim 3)

Claim 3 seeks money damages.  This is not a separate cause of action.  Rather, it is a request for relief.  Defendants are entitled to summary judgment as to Claim 3.

### 4.    Obstruction of mail (Claim 4)

Claim 4 seeks a private cause of action for alleged violations of 18 U.S.C. §1701 (obstruction of mails generally) & § 1702 (obstruction of correspondence).  Plaintiff's claims fail because there is no private right of action under either of these criminal statutes.  *See Sciolino v. Marine Midland Bank-Western*, 463 F. Supp. 128, 130-31 (W.D.N.Y. 1979) ("[a] civil claim arising out of an alleged violation of penal statutes relating to the mails i.e., 18 U.S.C. ss 1701, 1702, 1703, 1708 and 1709, is not the type of action envisioned under this section") (footnote omitted). Furthermore, plaintiff has abandoned this claim.  In his response to the motion for summary judgment, plaintiff recognized that he did not have a private cause of action, admitting that "[t]he federal courts have jurisdiction over U.S. Mail claims," that he "did not request damages," and that

11

he "wanted to bring this to the attention of this court."  Plaintiff's Response at pp. 14-15 (docket no.

89).  The decision as to whether or not to bring a prosecution for a violation of a federal penal statute

lies with the United States Attorney and not the courts.  Defendants are entitled to summary

judgment on Claim 4.

### 5.        Access to the courts (Claim 5)

Plaintiff contends that defendants violated his First Amendment right of access to the

courts by obstructing his mail box at the property.  In *Christopher v. Harbury*, 536 U.S. 403 (2002),

the Supreme Court recognized two broad categories of claims involving denial of access to the

courts.  The first category "are claims that systematic official action frustrates a plaintiff or plaintiff

class in preparing and filing suits at the present time."  *Harbury*, 536 U.S. at 413.  This category

includes prison litigation cases where the relief sought may be a law library for a prisoner's use in

preparing a case and denial of access cases challenging the filing fees that indigent plaintiffs cannot

afford to pay.  *Id.*  The essence of these access claims is that official action is presently denying the

plaintiff an opportunity to litigate.  *Id.*  In such cases, "the object of the denial-of-access suit, and

the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate

claim for relief once the frustrating condition has been removed."  *Id.*

The second category "covers claims not in aid of a class of suits yet to be litigated,

but of specific cases that cannot now be tried (or tried with all material evidence), no matter what

official action may be in the future."  *Id.* at 413-14.  In this category of cases, the official acts which

prevented access may have allegedly caused the loss or inadequate settlement of a meritorious case,

the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.

*Id.* at 414.  These cases do not look forward to the filing of future litigation, but backward to a time

when specific litigation ended poorly or could have produced a remedy subsequently unobtainable. *Id.* "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

> While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim . . . looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 414-15 (citations and footnote omitted).

Plaintiff has neither alleged nor demonstrated that defendants' actions with respect to the property's mail box interfered with particular anticipated litigation or resulted in the loss of a past litigation remedy. In short, he has failed to allege a cause of action for denial of access to the courts, and defendants are entitled to summary judgment on this claim.[8]

### 6.     Americans with Disabilities Act (Claim 7)

---

[8] The court notes that during the hearing to stay proceedings, plaintiff mentioned to the presiding judge that he missed an arraignment in the criminal matter because someone placed a "vacant" sign on the property's mail box. *See* Motion Trans. (Nov. 22, 2011) at p. 41 (docket no. 23). However, plaintiff did not allege this fact nor develop this line of argument in his response to defendants' motion for summary judgment.

Plaintiff's sole allegation with respect to this claim is that "[t]he DEFENDANT'S action violates the Americans with Disabilities Act."  Compl. at p. 10.  Plaintiff, however, abandoned this claim.  During the course of hearing defendants' motion to stay proceedings, the trial court reviewed all of plaintiff's claims pending in this litigation.    *See* Motion Trans. (docket no. 23).  During that review, plaintiff acknowledged that he was not bringing a claim based upon an alleged disability:

| | |
|---|---|
| *THE COURT*: | Well, nobody is trying to keep you out because you're disabled, are they?  Nobody is saying you're disabled, therefore, you cannot live someplace. |
| *MR. MOES*: | No.  No, Your Honor. |
| *THE COURT*: | All right.  So your disability is not an issue here, is it? |
| *MR. MOES*: | No. |

*Id.* at pp. 46-47 (docket no. 23).  Accordingly, it is unnecessary for the court to address plaintiff's ADA claim.

### 7.    **RICO violation (Claim 8)**

Plaintiff alleged that the City's mailings and treatment of him amounted to a RICO violation under 18 U.S.C. § 1961 *et seq.*  This claim is not meritorious.  A violation of the civil RICO statute requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393 (6th Cir., 2012) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  In his complaint, plaintiff appeared to premise his RICO action on violations of Michigan's extortion laws, M.C.L. § 750.213 (malicious threats to extort money, a felony, punishable by imprisonment for not more than 20 years) and

M.C.L. § 750.214 (extortion by public officers, a misdemeanor, punishable by imprisonment for not more than 90 days).[9]  Compl. at pp. 9-10.  Defendants contend that the alleged violations of state extortion law could not be "racketeering activity" under RICO because the maximum penalty was less than one year imprisonment.  *See* 18 U.S.C. § 1961(1)(A) (under RICO "racketeering activity," includes actions indictable under enumerated federal laws or certain categories of state laws, specifically "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." ). While this argument would be applicable to a RICO claim based on M.C.L. § 750.214 (maximum imprisonment of 90 days), it would not be applicable to a RICO claim based on M.C.L. § 750.213 (maximum imprisonment of 20 years).

In his response plaintiff abandoned his allegation of extortion under state law (*see* § II.C.1., *infra*), and now contends that the City is subject to a RICO violation for attempting to collect an unlawful debt (Claim 8).  In this regard, the RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  *See Begala v. PNC Bank, Ohio, National Association*, 214 F.3d 776, 781 (6th Cir. 2000) ( "[u]nder RICO, an enterprise is prohibited from engaging in a coordinated effort to

---

[9] *See* M.C.L. § 750.504 (Punishment of misdemeanors when punishment not prescribed by statute), which provides:

> If a person is convicted of a crime designated in this act or in any other act of this state to be a misdemeanor for which no punishment is specially prescribed, the person is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500.00, or both.

collect an unlawful debt"). Even if plaintiff could demonstrate that the City engaged in the collection of an "unlawful debt," he cannot show that its employees were "persons" employed by an "enterprise" which engaged in the collection of unlawful debt in violation of RICO.

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," and a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3), (4). Contrary to plaintiff's claim, the City and its employees cannot be both the enterprise and the persons engaged in the unlawful debt collection under RICO. As explained by the Court in *Begala*:

> Under RICO, a corporation cannot be both the "enterprise" and the "person" conducting or participating in the affairs of that enterprise. *See, e.g., Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir.1989). Under the "non-identity" or "distinctness" requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982).

*Begala*, 214 F.3d at 781. Here, plaintiff cannot create a RICO violation by characterizing the the City and its employees as the "enterprise" and "person" engaged in the illegal conduct. Accordingly, defendants are entitled to summary judgment on plaintiff's RICO claim.

## C. Plaintiff's state law claims

### 1. State law extortion (Claim 2)

In Claim 2, plaintiff alleged that defendants' invoices and other actions violated two Michigan extortion statutes, M.C.L. § 750. 213 and § 750.214. In his response to defendants'

motion for summary judgment, plaintiff expressed his desire and intent to dismiss his state extortion claims:

> The Defendants state at 9, paragraph 3, Plaintiff's civil RICO claim fails because the city's invoices for housing code fees are not communications chargeable as extortion under Michigan law.
>
> The Defendant's [sic] response is somewhat confusing and seems that they have the mistaken belief that this suit is being litigated in State Court.  [Plaintiff] very plainly cited federal statutes in his Complaint, 18 USC 1962 and 18 USC 1964. Let's focus on the federal statutes, *the State Of Michigan extortion claims are to be dismissed*.

*Moes I*, Plaintiff's Response at p. 15 (docket no. 89) (emphasis added).  Thus, the court deems these claims abandoned.

### 2. The City's invoices (Claim 6)

Plaintiff seeks damages to compensate for his time in dealing with the City's "fraudulent, illegal bills and invoices."  Compl. at pp. 10 and 12.  Plaintiff's complaint referred to three invoices from the City related to the City's housing inspections: issuance of notice of violation ($85.00) (March 18, 2008); "research to determine ownership" of the property ($80.00) (March 18, 2008); and a late penalty ($10.85) (May 28, 2008).  *See Moes I* (docket no. 1-1).  In addition, plaintiff refers to an invoice for a "housing complaint lien" ($225.00) (May 24, 2011).  *See Moes I* (docket no. 1-2).  These invoices were issued under the provisions of the City's Code.  *See Moes I* (docket nos. 1-1 and 1-2). Plaintiff's claims that these invoices violate federal and state law.  To the extent that plaintiff contends the invoices violate the Fifth Amendment Takings Clause, that claim is not ripe under the *Williamson County* test.  *See Moes I*, Plaintiff's Response at pp. 23-24 (docket no. 89).  To the extent that plaintiff contends the invoices were fraudulent or issued contrary to the City's Code or the Michigan Housing Law, his claims raise a question of state law.  *Id.* at pp.

17

24-26. *See* Const. 1963. Art. VII, § 22 (each city "shall have the power to adopt resolutions and ordinances relating to its municipal concerns, property and government"). *See, e.g., Rental Property Owners Association of Kent County v. City of Grand Rapids*, 455 Mich. 246, 253, 566 N.W.2d 514 1997) ("[t]he enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the state's constitution or general laws").

### 3. Trespass (Claim 9)

Finally, plaintiff alleged that on May 31, 2011, he posted "No Trespassing" signs on the property. Compl. at pp. 11 and 16. Plaintiff's final claim is that defendants trespassed on the property after he posted the signs. *Id.* This claim, which alleges common law trespass, involves a violation of Michigan state law. *See Adams v. Cleveland-Cliffs Iron Company*, 237 Mich. App. 51, 67, 602 N.W.2d 215 (1999) ("[r]ecovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession").

### 4. Dismissal of remaining state law claims

Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court exercised its supplemental jurisdiction over plaintiff's state law trespassing claim, because that claim appeared intimately related to the alleged violations of federal law. The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section

1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's remaining state law claims for the allegedly illegal invoices (Claim 6) and trespass (Claim 9). These claims will be dismissed.

III.    **Plaintiff's claims in *Moes II***

As discussed above, plaintiff filed a motion for relief which was docketed as a separate action (*Moes II*) and then consolidated with plaintiff's pending civil action (*Moes I*). Plaintiff's motion sought relief from his state criminal conviction purportedly under the procedures for removing a civil action from state court, i.e., 28 U.S.C. § 1446 (Procedure for removal of civil actions). However, plaintiff sought to remove a criminal prosecution, not a civil action, and in doing so he failed to follow the statutory requirements for removal of criminal prosecutions from state court under the criminal removal provision, 28 U.S.C. § 1455. *See Moes II*, No. 1:12-cv-1092 (Order to Consolidate Cases) (docket no. 8). Furthermore, plaintiff could not successfully remove his criminal prosecution from state court under this provision. Title 28 U.S.C. § 1455 "was enacted in December of 2011 as a new section of the United States Code to codify the procedure for removal

19

of criminal actions under 42 U.S.C. § 1442," which, in turn, "is limited in its application to instances involving federal officials acting within the scope and domain of their official duties." *McEachern v. Pennsylvania*, No. 2:12-cv-1238, 2012 WL 5381407 at *2-*3 (W.D. Pa. Sept. 24, 2012) and 2012 WL 5381402 (W.D. Pa. Oct. 31, 2012). There is no evidence here that plaintiff was subject to criminal prosecution in the state court because he was a federal official acting within the scope and domain of his official duties.

Plaintiff's motion in *Moes II* was, for all intents and purposes, a request for habeas relief, attacking his state court conviction on grounds such as ineffective assistance of trial counsel, prosecution under unconstitutional ordinances, and actions by the state judge which violated his constitutional rights during the trial. Although plaintiff filed this motion while awaiting sentencing for the misdemeanor convictions, he was nonetheless under the custody of the court, being subject to its orders to appear for his pre-sentence investigation, pre-sentence interview and sentencing hearing. *See* Criminal docket sheet (docket no. 92-2); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (for purposes of obtaining federal habeas corpus relief, "individuals on parole, probation, or bail may be in custody for purposes of sections 2241 and 2254"). Under these circumstances, plaintiff could not use the pending civil rights action as a procedural vehicle in which to launch a federal habeas challenge his conviction. *See generally, Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement . . . He must seek federal habeas corpus relief (or appropriate state relief) instead.)" (internal quotation marks omitted). Plaintiff's motion was an improvidently filed request for habeas relief. *See* 28 U.S.C. § 2254. Accordingly, plaintiff's motion for relief will be denied and *Moes II* will be dismissed.

**IV.** **Conclusion**

**A.**     The following rulings apply to the lead case, *Moes I*, 1:11-cv-912:

    **1.**     Defendants' motion for summary judgment (docket no. 75) is **GRANTED** as to Plaintiff's Claims 1, 2, 3, 4, 5, 7 and  8, and **DENIED** as to Claims 6 and 9.

    **2.**     Plaintiff's Claims 6 and 9 are **DISMISSED** for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

    **3.**     The case is **CLOSED**.

**B.**     The following rulings apply to the member case, *Moes II*, 1:12-cv-1092:

    **1.**     Plaintiff's motion for relief (docket no. 1) is **DENIED**.

    **2.**     The case is **CLOSED**.

**C.**     An order consistent with this opinion shall be issued forthwith.


Dated:  November 16, 2012                              /s/ Hugh W. Brenneman, Jr.
                                                                        HUGH W. BRENNEMAN, JR.
                                                                        United States Magistrate Judge

21